UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/28/19

LAZARDO SALGADO,

                      Plaintiff,

     -against-

SHERIFF CARL E. DUBOIS, OFFICER D.K.
DEWITT, Shield No. 144, DR. SODEN of Correct
Care Solutions, DR. PRICE of Correct Care
Solutions, ARAMARK CORRECTIONAL
SERVICE, LLC, individually and in their official
capacities

                     Defendants.

17-cv-6040 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

      Plaintiff Lazaro Salgado, an inmate currently housed at the Groveland Correctional

Facility, commenced this *pro se* action on August 8, 2017 against Defendants Sheriff Carl

DuBois and Officer D.K. Dewitt of the Orange County Sheriff's Office ("County Defendants"),

Dr. Soden and Dr. Price who were employed by Correct Care Solutions ("CCS") to provide

medical services at the Orange County Correctional Facility ("OCCF"), and Aramark

Correctional Services, LLC ("Aramark"), (collectively referred to as "Defendants"), asserting

multiple claims pursuant to 42 U.S.C. §1983.[1]  (ECF No. 2.)  Plaintiff filed an amended

complaint on October 24, 2017. (ECF No. 7.) On January 26, 2018, Plaintiff filed a second

amended complaint ("SAC") asserting violations of his Eighth Amendment rights under 42

U.S.C. §1983.  (ECF No. 16.)  The SAC is the operative compliant.

      Reading the SAC liberally,  Plaintiff  attempts to assert  claims under the Eighth

Amendment for the following:  (a) unsanitary, inadequate and unhealthy meals against Aramark;

---

[1] Attached to Plaintiff's initial complaint are two grievances, Grievance Nos. 2016-7226 and 2016-7205.

(b) inadequate medical care against Dr. Price and Dr. Soden, and presumably CCS; (c) deliberate indifference to Plaintiff's nutritional and medical needs and retaliation as a result of Plaintiff filing prison grievances against Sheriff DuBois; and (d) tampering with Plaintiff's meals and retaliation as a result of Plaintiff filing prison grievances against Defendant Dewitt.[2] Presently before the Court are Defendants' motions to dismiss pursuant to Federal Rules of Civil Procedure §12(b)(6) for failure to state a plausible claim. (ECF Nos. 33, 40 and 48.) For the following reasons, Defendants' motions are GRANTED in part and DENIED in part.

## BACKGROUND

For the purpose of this motion, the allegations in the SAC are deemed true and are given every favorable inference.

Plaintiff alleges that he was an inmate at OCCF on March 15, 2016. (SAC p. 4.) While at OCCF, Plaintiff received medical care from Dr. Price and Dr. Soden, employees of CCS, who provided medical care to inmates at that facility. (*Id.*¶ 1). Dr. Soden and Dr. Price placed Plaintiff on a cardiac vascular diet meal which contained insufficient calories and lacked vitamins and nutrients to maintain his physical and mental health. (*Id.*) The medically imposed diet exacerbated Plaintiff's mental illness, resulted in him losing approximately fifty pounds, and caused him to suffer pain, nausea, vomiting, diarrhea, migraines, and emotional distress. (*Id.*) Plaintiff was taken off the cardiac vascular diet on August 12, 2016. (*Id.* ¶ 7).

Plaintiff alleges that from March 15, 2016 to August 12, 2016 , while he was incarcerated at OCCF, Aramark provided meals to the correctional facility which were unhealthy, lacked nutrient value, and were unsanitary. (*Id.* ¶ 2). The meals, including the diet meals Aramark served to Plaintiff, consisted of decayed bread, "flawed" beans, and uncooked beef and chicken,

---

[2] The Court notes that Plaintiff does not assert any claims against Orange County.

which were either pink or red, and smelled rotten. (*Id.*)  Additionally, Aramark served him salads

that contained insects and served meals on festered trays filled with bacteria particles from

brownish rusted water.  (*Id.*)  Plaintiff attributes his weight loss, pain and suffering, nausea,

vomiting, diarrhea, migraines, emotional distress, and exacerbated mental illness to Aramark's

inadequate meals, and he continues to suffer from those conditions to present day. (*Id.* ¶ 3.)

Plaintiff alleges that from March 15, 2016 to August 2016, Defendant Dewitt tampered

with his meals.  (*Id.* ¶ 4.)  Dewitt purportedly contaminated his meals by placing bodily fluids,

waste, soaps, metal pins, staples and powdery substances in his food.  (*Id.*)  Because of the

inadequate and contaminated food, Plaintiff went on a hunger strike to protest his situation,

Dewitt's misconduct.  (*Id.* ¶ 5.)  During his hunger strike, Dewitt made bets with unspecified

correctional officers on when Plaintiff would start eating again.  (*Id.*)

Lastly, Plaintiff alleges he filed his grievances with Sheriff Carl DuBois concerning

Aramark meals wherein he complained about the lack of sufficient calories, vitamins, nutritional

value, and the absence of sanitary conditions.  (*Id.* ¶ 6.) Plaintiff also filed written grievances

regarding Dewitt's tampering with his meals and the alleged inadequate medical care provided

by Defendants Soden, Price, and CCS.  (*Id.*)  Despite his grievances, Plaintiff alleges that Sheriff

DuBois disregarded Plaintiff's complaints and denied the grievances on the merits. (*Id.*)

County Defendants attached the grievances Plaintiff referred to in the SAC, Grievance

Nos. 2016-7205, 2016-7205, 2016-7289, and 2016-7291, which were filed by Plaintiff while he

was housed at OCCF from March 15, 2016 to September 29, 2016, to their memorandum of law

in support of their motion to dismiss.[3]  (Lagitch Decl. Ex. B, ECF. No. 34.)  Grievance No.

---

[3] The Court may consider these grievances at the motion to dismiss stage because Plaintiff referenced the grievances in his SAC. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (holding that a complaint is deemed to include any document incorporated by reference).

2016-7205 was submitted on July 23, 2016 and received on July 29, 2016. (*Id.*)  In Grievance

No. 2016-7205, Plaintiff complained that his meals were inadequate, the portions were small

("trying to starve us"), and that he was served red beans "out of a can" again.  (*Id.*)  He also

suggested the meal was not properly prepared.  (*Id.*)  Nowhere in the grievance did Plaintiff

allege that the food was tampered with.  In response to the grievance, the document indicates that

Plaintiff was placed on a dietic meal and was to inform the staff whether the meals he receives

are in compliance with the correct "cardiac diet."  (*Id.*)

Grievance No. 2016-7226 was submitted on August 6, 2016 and received August 8,

2016.  (*Id.*)  Plaintiff stated that as of August 5, 2016, he was going on a hunger strike due to his

prior grievances concerning the mess hall.  (*Id.*)  In the grievance, he wrote that Officer Dewitt

refused to log the fact that he was going on a hunger strike.  (*Id.*)  He further elaborated that his

hunger strike stemmed from his prior grievances about the mess hall and that circumstances had

worsened.  (*Id.*)  In the resolution section of the document, Plaintiff withdrew his complaint that

he was taken off the cardiac diet.  (*Id.*)

Plaintiff filed two grievances, 2016-7289 and 2016-7291, on September 27, 2016 which

were received on September 28, 2016.  In Grievance No. 2016-7289, Plaintiff alleged that CCS

failed to provide him adequate medical services, were negligent in the past, and forced him to

make a court appearance despite his complaints that he felt weak.  (*Id.*)  Additionally, Plaintiff

noted that he fell which caused him to suffer migraines, hurt his right knee resulting in swelling,

and was denied an X-ray when requested.  (*Id.*)  Lastly, Plaintiff stated that his Boost nutritional

drink was taken away and that he wants it returned.  (*Id.*)  Plaintiff's grievance was denied on the

merits.

In Grievance No. 2016-7291, Plaintiff stated that he went on a hunger beginning on August 5, 2016 due to food issues. He alleged that he was being starved due to the small portions being served and "food [is] always missing from trays." (*Id.*) When a bologna and cheese sandwich is served, only one slice of meat and cheese is provided. (*Id.*) In response to Plaintiff's complaint, according to the document, several trays were pulled randomly during a one-week period and weighed. Trays that did not meet the required or proper weight were adjusted. The food portions provided met or exceeded that which was required to be provided.

## STANDARD OF REVIEW

### I. Rule 12(b)(6)

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

"When there are well-pleaded factual allegations [in the complaint], a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. The court must "take all well-plead factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d. Cir. 1996). However, the presumption of truth does not extend to "legal conclusions, and threadbare recitals of the elements of the cause of

action." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. 662) (internal

quotation marks omitted). A plaintiff must provide "more than labels and conclusions" to show

he is entitled to relief. *Twombly*, 550 U.S. at 555.

On the other hand, Courts are required to assess a *pro se* plaintiff's complaints "liberally

and interpret [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723

F.3d 399, 403 (2d Cir. 2013) (internal quotation marks omitted). In his SAC, the Plaintiff

references the grievances he filed regarding the inadequacy of the meals he received and

Dewitt's alleged tampering with his food. However, he does not specify the dates of those

grievances or their outcome. While ordinarily the Court may not consider exhibits extrinsic to

the SAC without converting the motion to dismiss to a motion for summary judgment, the Court

may and will consider the grievance forms that the County Defendants submitted as attachments

to their motion to dismiss because Plaintiff had actual notice of these grievance forms, relied on

them in framing his claims and referenced the documents in his SAC. *In re Bank of Am. AIG

Disclosure Sec. Litig.*, 980 F. Supp. 2d 564, 570 (S.D.N.Y. 2013) (citing *Chambers v. Time

Warner, Inc.*, 282 F.3d 147, 153 (2d. Cir. 2002)) ("[T]he Court may consider documents

that are referenced in the complaint, documents that the plaintiffs relied on in bringing suit and

that are either in the plaintiffs' possession or that the plaintiffs knew of when bringing suit, or

matters of which judicial notice may be taken.").

## II.     42 U.S.C.A. §1983

Pursuant to 42 U.S.C.A. §1983 ("§1983" or "Section 1983"), in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or
usage, of any State or Territory, subjects or causes to be subjected, any citizen of
the United States or other person within the jurisdiction thereof to the deprivation
of any rights, privileges, or immunities secured by the Constitution and laws, shall
be liable to the party injured in any action at law, suit in equity, or other proper
proceeding for redress.

Although §1983 "is not itself a source of substantive rights, it is a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004).

To state a claim under § 1983, a plaintiff must allege "(1) the challenged conduct was attributable to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York*, No. 09-CV-5446(SHS), 2013 WL 1803896, at *2 (S.D.N.Y. Apr. 25, 2013); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010); *Quinn v. Nassau Cty. Police Dep' t*, 53 F. Supp. 2d 347, 354 (E.D.N.Y. 1999) (Section 1983 "furnishes a cause of action for the violation of federal rights created by the Constitution."). Additionally, "[i]n this Circuit personal involvement of defendants in the alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004); *Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir. 2001); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977).

Generally, the U.S. Constitution regulates only governmental conduct, not the conduct of private parties. *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 186 (2d. Cir. 2005). Therefore, a litigant claiming that his constitutional rights have been violated by a private entity must demonstrate that the defendant was acting under the color of law. *Fabrikant v. French*, 691 F.3d 193, 206 (2d. Cir. 2012). The conduct of a private entity is deemed attributable to the state when: "(1) the entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state ('the compulsion test'); (2) when the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the [s]tate,' or the entity's functions

are 'entwined' with state policies ('the joint action test' or 'close nexus test'); or (3) when the entity 'has been delegated a public function by the [s]tate,' ('the public function test')." *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d. Cir. 2008) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n.*, 531 U.S. 288, 296 (2001)) (citations and internal quotation marks omitted)).

### III.    *Monell* **Claim**

A municipality may be sued under 42 U.S.C. § 1983 only "when execution of [the] government's policy or custom . . . inflicts the injury." *Monell v. Dep't of Soc. Serv. of the City of N.Y.*, 436 U.S. 658, 694 (1978). Such a claim is commonly referred to as a *Monell* claim. A *Monell* claim against a municipal entity must "show that the challenged acts were performed pursuant to a municipal policy or custom." *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004). Courts in this Circuit apply a two-prong test for § 1983 claims brought against a municipal entity. *Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985). First, the plaintiff must "prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused [the plaintiff's] injuries beyond merely employing the misbehaving officer." *Id.* (internal citation omitted). Second, the plaintiff must establish a " 'direct causal link between a municipal policy or custom and the alleged constitutional deprivation.' " *Hayes v. County of Sullivan*, 853 F. Supp. 2d 400, 439 (S.D.N.Y. 2012) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). "[T]he simple recitation that there was a failure to train municipal employees does not suffice to allege that a municipal custom or policy caused the plaintiff's injury." *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993); *see also Davis v. City of New York*, No. 07-CV-1395(RPP), 2008 WL 2511734, at *6 (S.D.N.Y. June 19, 2008) (holding that "conclusory allegations that a municipality failed to train and supervise

its employees" are insufficient to state a *Monell* claim absent supporting factual allegations).  A municipality may not be held liable under §1983 on a *respondeat superior* theory solely because the municipality employs a tortfeasor. *Monell v. Dep't of Soc. Serv. of the City of N.Y*., 436 U.S. 658, 692 (1978).

A municipality may be liable if its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id*. at 694.  Hence, both official and unofficial policies may suffice for establishing *Monell* liability.  For an unofficial policy or custom to invite *Monell* liability, the practice, custom or usage must be so widespread and so persistent that it has the force of law. *See Lauro v. City of New York*, 39 F. Supp. 2d 351, 366 (S.D.N.Y. 1999), *rev'd on other grounds*, 219 F.3d 202 (2d Cir. 2000).

## IV.    Eighth Amendment

The Eighth Amendment guarantees freedom from "cruel and unusual punishment." U.S. Const. amend. VIII.  Essentially, the Eighth Amendment prohibits states from depriving prisoners of their "basic human needs—e.g., food, clothing, shelter, medical care and reasonable safety." *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (quoting *DeShaney v. Winnebago Cty. Dep't of Soc. Serv.*, 489 U.S. 189, 199 – 200 (2d. Cir. 1993)).  In prisons, inmates have the right to be free from conditions of confinement that impose an excessive risk to inmate health or safety.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  To plead a successful Eighth Amendment claim, an inmate must demonstrate that (1) the challenged condition is objectively serious, and (2) the official responsible acted with deliberate indifference his health or safety.  *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Smith v. Carpenter*, 316 F.3d 178, 183 – 84 (2d Cir. 2003); *Phelps v. Kapnolas*, 308 F.3d. 180, 185 – 86 (2d. Cir. 2002).  The inquiry into deliberate

indifference looks at whether an official knows of and disregards an excessive risk to an inmate's health or safety. *Farmer*, 511 U.S. at 838.

To establish that a medical condition was "sufficiently serious" a plaintiff must allege "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Coke v. Med., Dep't of Corr. & Cmty. Supervision*, No. 17-CV-0866(ER), 2018 WL 2041388, at *3 (S.D.N.Y. Apr. 30, 2018). There are various relevant factors that the court may consider when deciding whether a medical condition is "sufficiently serious," including chronic and substantial pain or the presence of a medical condition that significantly affects an individual's daily activities. *Id*. However, an actual physical injury is not necessary to claim inadequate medical care. *Smith*, 316 F.3d at 188. Rather, a sustainable inadequate medical care claim can be based on exposure of "an inmate to an unreasonable risk of future harm." *Id*. Nonetheless, as the Supreme Court noted, a prison official's duty is only to provide reasonable care. *Farmer*, 511 U.S. at 834.

"Medical malpractice does not rise to the level of a constitutional violation unless the malpractice involves culpable recklessness – 'an act or a failure to act by [a] prison doctor that evinces a conscious disregard of a substantial risk of serious harm.'" *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) (quoting *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998)) (internal quotation omitted); *see also Estelle v. Gamble*, 429 U.S. 97, 105 – 06 (1976) (noting that an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind"); *Smith*, 316 F.3d at 184 ("Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will

rise to the level of a constitutional violation."); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (observing that "negligent malpractice do[es] not state a claim of deliberate indifference").

In the context of food, the "Eighth Amendment requires 'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well- being of the inmates who consume it.' " *Willey v. Kirkpatrick*, 801 F.3d 51, 69 (2d. Cir. 2015) (quoting *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (*per curiam*)). However, "assuming a diet's nutritional adequacy, prison officials have the discretion to control its contents." *Word v. Croce*, 169 F. Supp. 2d 219, 226 (S.D.N.Y. 2001). Prisoners are not entitled "every amenity which one might find desirable." *Robles*, 725 F.2d at 12 (quoting *Wolfish v. Levi*, 573 F.2d 118, 125 (2d Cir. 1978), *rev'd on other grounds sub nom*).

## V.    **Exhaustion of Remedies**

Under the Prison Litigation Reform Act of 1995 (" PLRA"), inmates cannot bring any suit relating to prison conditions "until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a). This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Inmates must properly exhaust administrative remedies by "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)."  *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (emphasis omitted) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (internal quotation mark omitted).  It is each prison' s requirements, and not the PLRA, that define proper exhaustion, and so, when undertaking the exhaustion inquiry, courts must "look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures."  *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009).  A plaintiff must invoke all available

administrative mechanisms, including appeals, "through the highest level for each claim." *Varela v. Demmon*, 491 F. Supp. 2d 442, 447 (S.D.N.Y 2007); *Veloz v. New York*, 339 F. Supp. 2d 505, 514 (S.D.N.Y. 2004).

An inmate under the custody of DOCCS must follow the three-step process established in the Inmate Grievance Program ("IGP"). N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5. First, the inmate files a complaint to the Inmate Grievance Review Committee ("IGRC"), and the IGRC issues a decision regarding the grievance. § 701.5(b). The inmate may then appeal the decision to the superintendent by completing the appeal section of the IGRC response form. § 701.5(c). Finally, the inmate may appeal the superintendent's decision to the Central Office Review Committee ("CORC") by submitting the appropriate form to the grievance clerk within seven calendar days of the superintendent' s response. § 701.5(d).

An inmate may be excused from fully complying with the PLRA requirement of exhaustion under several circumstances. Inmates have been excused from the exhaustion requirement when the administrative procedure operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates. *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016). An administrative scheme might be unclear or so "opaque that it becomes, practically speaking, incapable of use—i.e., some mechanism exists to provide relief, but no ordinary prisoner can navigate it." *Id.* at 1853 – 54. Similarly, administrative remedies have been deemed unavailable when a defendant's behavior, through machination, misrepresentation, or intimidation, prevents the inmate from asserting his rights under the given procedures. *Id.* at 1860. Acceptance of an administrative decision of an inmate's grievances has been deemed to constitute a failure to exhaust. *McWillis v. County of Orange*, No. 17-CV-4805(VB), 2018 WL 3038497, at *5 (S.D.N.Y. June 19, 2018) ("By indicating his acceptance,

plaintiff did not appeal the grievance appeal decision to the Citizen's Policy and Complaint

Review Council, as required to exhaust administrative remedies at OCJ.").

## DISCUSSION

### I.    Claims against Defendant DuBois

As previously discussed, it is well settled in "this Circuit [that] personal involvement of

defendants in the alleged constitutional deprivations is a prerequisite to an award of damages

under § 1983." *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004); *Provost v. City of*

*Newburgh*, 262 F.3d 146, 154 (2d Cir. 2001); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.

1977). Personal involvement requires "direct participation, or failure to remedy the alleged

wrong after learning of it, or creation of a policy or custom under which unconstitutional

practices occurred, or gross negligence in managing subordinates." *Black v. Coughlin*, 76 F.3d

72, 74 (2d Cir. 1996). In his SAC, Plaintiff fails to allege any personal involvement on the part

of Sheriff DuBois sufficient to impose liability. At best, Plaintiff alleges that Defendant DuBois

disregarded his complaints, presumably about the inadequate food, and denied his grievances on

the merits. Such conduct, even if taken as true, does not amount to personal involvement. A

denial of an inmate's grievance by a prison official is insufficient to establish personal

involvement. *See Manley v. Mazzuca*, No. 01-CV-5178, 2007 WL 162476 at *10 (S.DNY Jan.

19, 2007) (citing *Foreman v. Goord*, No. 02-CV-7089, 2004 WL 1886928, at *7 (S.D.N.Y. Aug.

23, 2004)).

The Second Circuit has suggested that those who play an "adjudicating role

concerning a grievance cannot insulate" themselves from "responsibility for allowing the

continuation of the allegedly unlawful policies." *McKenna v. Wright*, 386 F.3d. 432, 437

(2d. Cir. 2004). But here, the grievances submitted suggest that prison officials addressed

13

each of Plaintiff's grievances.   Although Plaintiff may have not agreed with these officials'

decisions, there is no suggestion Sheriff DuBois disregarded his grievances.  Finally,

Plaintiff alleges that Sheriff DuBois was deliberately indifferent to his health problems

related to the inadequate food he received.  However, beyond pleading the conclusory

allegation that Sheriff DuBois "discarded . . . and/or prematurely [ ] decided on the merits"

(SAC ¶ 6.)  Plaintiff does not allege any personal involvement by Defendant DuBois in

issues with his medical care or his receipt of inadequate food.  "It is well settled in this

Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a

prerequisite to an award of damages under §1983.' " *Wright v. Smith*, 21 F.3d 496, 501 (2d.

Cir. 1994).  For this reason, his deliberate indifference claim against Sheriff DuBois fails

and Plaintiff's claim as against Sheriff DuBois must be dismissed for lack of personal

involvement.

## II.   *Monell* **claims**

To the extent Plaintiff seeks to assert a *Monell* claim, that claim is also dismissed.

Generally, merely asserting, in the absence of factual allegations in support, that a municipal

entity has a custom or policy that denies a plaintiff a constitutional right is insufficient to

establish a plausible claim.  *See Batista v. Rodriguez*, 702 F.2d 393, 397, 399 (2d Cir. 1983).

"[G]overnment officials and private actors deemed to be engaged in state action are not entitled

to the protections of *Monell* and local governments are not entitled to qualified immunity."

*Herrera v. Santa Fe Pub. Sch*., 41 F. Supp. 3d 1027, 1099 (D. N.M. 2014) (citing *Leatherman v.*

*Tarrant Cty. Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 165 – 67 (1993)).  Here,

no allegations in the SAC suggest that a municipal entity had a custom or policy that deprived

Plaintiff of his Eighth Amendment, or any other, constitutional rights. Therefore, Plaintiff's

SAC does not state a facially plausible claim for *Monell* liability against any municipality.

### III.    Exhaustion

Defendants assert that Plaintiff's SAC must be dismissed because Plaintiff failed to

exhaust his administrative remedies.

In the SAC, Plaintiff notes that he filed "written grievances." (SAC ¶ 6.) Specifically,

Plaintiff's July 23, 2016 grievance involved complaints about meal portion size and lack of

variety in meals. That grievance was accepted. Plaintiff's August 6, 2016 grievance concerned

Defendant Dewitt's failure to log Plaintiff's hunger strike and was withdrawn. Plaintiff's

September 27, 2016 grievances, both denied on the merits, alleged that CCS failed to provide

him with adequate medical services and also reiterated that food servings continued to be too

small.

### A.  Claims against CCS, Dr. Soden, and Dr. Price

If a grievance, the first level of review, is denied, an inmate may seek appeal to the prison

superintendent and then, if necessary, may appeal the superintendent's decision to the CORC.

*Crenshaw v. Syed*, 686 F. Supp. 2d 234, 236 (W.D.N.Y. 2010). "In general, it is only upon

completion of all three levels of review that a prisoner may seek relief in federal court

under § 1983." *Id.*; *see Reynoso v. Swezey*, 238 F. App'x 660, 664 (2d Cir. 2007) (holding that

an inmate failed to exhaust a claim when he filed a grievance but failed to pursue an appeal).

Because the only grievance plausibly concerning CCS, Dr. Soden, or Dr. Price was denied and

Plaintiff does not allege that he filed an appeal or any other grievances relating to Defendants

CCS, Dr. Soden, or Dr. Price, his claims against those Defendants are not exhausted and are dismissed.[4]

## B. Claims against Aramark

Plaintiff's grievance about inadequate portion sizes and lack of variety in food was accepted. That grievance did not raise any sanitary issues relating to the food. In deference to Plaintiff's *pro se* status, the Court considers Plaintiff's allegations surrounding meal adequacy to be sufficiently related to the question of whether the meals are sanitary. Plaintiff has exhausted his claims against Aramark about the adequacy of the meals.

## C. Claims against Dewitt

While Plaintiff alleges Dewitt tampered with his food, he does not allege, and the grievances do not show, that he exhausted this claim. The only mention of Defendant Dewitt in Plaintiff's grievances is in his August 8, 2016 grievance, which was withdrawn. Plaintiff complained that Defendant Dewitt failed to enter his hunger strike into a log. However, this incident in no way suggests that Defendant Dewitt tampered with Plaintiff's food. At most, it indicates that Defendant Dewitt failed to follow procedure. Even if the Court were to consider a withdrawn grievance to have satisfied the requirement of exhaustion, the issue in that grievance was unrelated to Plaintiff's allegation in this case that Defendant Dewitt tampered with his food.

---

[4] Even if Plaintiff had exhausted his claims against these Defendants, he still would fail to state a facially plausible claim against them for inadequate medical care. To state a §1983 claim for inadequate medical care under the Eighth Amendment, a plaintiff must allege facts showing that correction officials were deliberately indifferent to the plaintiff's serious medical condition. *See Estelle v. Gamble*, 429 U.S. 97, 104 – 05 (1976). For there to be deliberate indifference, there must be a "sufficiently serious" condition that "could result in further significant injury or the unnecessary and wanton infliction of pain" and the defendant must have acted with deliberate indifference. Here, Plaintiff alleges that Dr. Soden and Dr. Price "knowingly imposed upon Plaintiff a cardiac vascular diet meal" and that those Defendants "were well aware of Aramark Correctional Services' diet meals being unhealthy, under nutrient value, and unsanitary." (SAC ¶ 1.) The allegations that these Defendants are conclusory. It is unclear from the SAC, or common sense, how the doctors would know details about the condition of the actual food Plaintiff was served. Unlike with Defendant Aramark, there are no allegations and nothing in the grievances incorporated by reference to indicate that the doctors or CCS sold, provided, or assembled food to or for Plaintiff. Plaintiff's allegations amount to accusing the doctors of prescribing a course of treatment, and the mere act of prescribing a course of treatment does not amount to a constitutional violation.

*See Magassouba v. Cross*, No. 08-CV-4560(RJH)(HBP), 2010 WL 1047662, at *8, 12 (Mar. 1, 2010) (holding that a plaintiff failed to exhaust some of his claims because, while he filed grievances, those grievances were not related to those claims). The purpose of the exhaustion requirement is to allow "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Rugiero v. County of Orange*, 467 F.3d 170, 178 (2d Cir. 2006) (quoting *Porter v. Nussle*, 534 U.S. 516, 516 – 17 (2002)) (internal quotation mark omitted). Plaintiff did not file a grievance about or related to Defendant Dewitt's alleged tampering with his food which means that neither Defendant Dewitt nor his supervisors had the opportunity to address the issue, defeating the purpose of exhaustion. Accordingly, Plaintiff has failed to exhaust his claims against Defendant Dewitt.

## IV. Plaintiff's § 1983 claims against Defendant Aramark

### A. Acting Under Color of State Law

An outstanding threshold question is whether a private contractor—such as Defendant Aramark— can be deemed to be a state actor for the purposes of §1983. Generally, private entities are not subject to §1983. *See Jones v. Nat'l Commc'n & Surveillance Networks*, 409 F. Supp. 2d 456, 471 (S.D.N.Y. 2006). Defendant Aramark provides food services to the prison.

Plaintiff does not affirmatively assert that Aramark is a state actor. However, it is clear from the allegations that Defendant Aramark was acting under the color of state law. To determine whether Aramark acted under the color of state law, the question is whether Aramark's actions reflect state action under the "close nexus" and "public function tests." *See Sybalski v. Indep. Grp. Home Living Program, Inc*., 546 F.3d 255 (2d Cir. 2014).

To meet the burden under the "close nexus test," a plaintiff must demonstrate that there is a "sufficiently close nexus between the State and the challenged action of the regulated entity so

that the action of the latter may be fairly treated as that of the State itself." *Torres v. Aramark Food & Commissary Serv.*, No. 14-CV-7498(KMK), 2015 WL 9077472 (S.D.N.Y. Dec. 16, 2015) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)); *accord McWillis v. County of Orange*, No. 17-CV-4805, 2018 WL 3038497 (S.D.N.Y. June 19, 2018). Courts have likened private food contractors to private physicians who are paid to provide for inmates in state and local facilities and who are considered state actors. *Pagan v. Westchester County,* No. 12-CV-7669 (PAE)(JCF), 2014 WL 982876, at *7 (S.D.N.Y. Mar. 12, 2014). Aramark's " 'seemingly private behavior' can be treated as that of the state given that the challenged action, proper food service, flows directly from the obligations of the government entity and is performed under its supervision." *Id.* (quoting *Gerber v. Sweeney*, No. 02-CV-241, 2003 WL 1090187, at *1 (E.D. Pa. Mar. 7, 2003)).

Turning to the public function test, " 'the exercise by a private entity of powers traditionally *exclusively* reserved to the [s]tate' can constitute 'state action.' " *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255 (2d Cir. 2014) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352 (1974)). Courts have directly ruled on this issue and held that Aramark, by providing meals to inmates, performs a "public function" and therefore is a state actor. *Ackridge v. Aramark Corr. Food Serv.*, No. 16-CV-6301(KMK), 2018 WL 1626175, at *8 (S.D.N.Y. Mar. 30, 2018) ("[P]roviding food to inmates is a pubic function."); *Torres v. Aramark Food & Commissary Serv.*, No. 14-CV-7498(KMK), 2015 WL 9077472, at *6 (S.D.N.Y. Dec. 16, 2015) (concluding Aramark acted as the state's culinary surrogate and therefore was a state actor under the public function test); *Jubeh v. Dart*, No. 11-CV-3873, 2011 WL 6010267, at *1 (N.D. Ill. Nov. 29, 2011); *McCullum v. City of Philadelphia*, No. 98-CV-

5858, 1999 WL 493696, at *2 (E.D. Pa. July 13, 1999). In this case, Aramark was acting under the color of law under the close nexus test and the public function test.

### B. Deprivation of a constitutional right

Plaintiff has alleged that because of the cardiac diet he was placed on, his meals were inadequate; they were nutritionally inferior and caused him to lose fifty pounds in five months. Plaintiff also claims that, despite his complaints, Aramark did not adequately address the situation. Plaintiff alleges that the inadequate diet was not simply an occasional problem, but rather he was regularly given spoiled and improperly portioned food. The issue is not that the menu items were inadvertently lacking in nutrition, but that the cardiac diet consisted of inadequately portioned food and that the food in general was unsanitary.

Giving Plaintiff every favorable inference, the allegations rise to the level of a facially plausible Eighth Amendment claim. The Eighth Amendment bars cruel and unusual punishment. U.S. Const. amend. VIII. "Although the Constitution does not require 'comfortable' prison conditions, the conditions of confinement may not 'involve the wanton and unnecessary infliction of pain.' " *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013); *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981). Here, Plaintiff alleges that the food served in OCCF is inadequate both in quantity and quality, which is essentially a complaint about prison conditions. As discussed above, a plaintiff states a claim based on the conditions of confinement under the Eighth Amendment when the plaintiff alleges that (1) the deprivation the plaintiff experienced was objectively "sufficiently serious that he was denied the minimal civilized measure of life's necessities," and (2) the defendant, subjectively, acted with a "sufficiently culpable state of mind . . . such as deliberate indifference to inmate health or safety." *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001). Prison officials may have a sufficiently culpable state of mind if

they participate directly in the alleged deprivation, learned of the inmate's complaint and failed to remedy it, created or allowed a policy that harmed the inmate, or were grossly negligent in managing subordinates. *Id.*

### i. Sufficiently serious deprivation

The deprivation of adequate food alleged in the SAC is sufficient to satisfy the first element. Under the Eighth Amendment, inmates are entitled to "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *O'Keefe v. Goord*, 77 F. App'x 42, 44 (2d Cir. 2003) (quoting *Robles v. Coughlin,* 725 F.2d 12, 14 (2d Cir. 1983) (*per curiam*)). To amount to an Eighth Amendment violation, any deprivation of food or nutrients must be enough to create a serious danger to the health of the inmate. *Butler v. Hogue*, No. 08-CV-264(GLS)(DRH), 2010 WL 4025886, at *3 (N.D.N.Y. Oct. 13, 2010); *see Hotto v. Finney*, 437 U.S. 678, 683 & 687 (1978) (holding that a diet of fewer than 1,000 calories per day would be "intolerably cruel for weeks or months"). In *Willey v. Kirkpatrick*, the Second Circuit held that an inmate's allegations that he was routinely served stale bread and rotten cabbage as part of his restricted diet were sufficient to state a facially plausible claim under the Eighth Amendment. 801 F. 3d 51, 69 (2d Cir. 2015). In reaching this holding, the court considered the plaintiff's *pro se* status and the fact that the plaintiff's allegations were about the meals he personally received. *Id.* The Second Circuit has addressed inadequate quantity of food and, in *Phelps v. Kapnolas*, reversed a district court's dismissal of a plaintiff's Eighth Amendment claims. 308 F.3d 180, 187 (2d Cir. 2002). The court held that the plaintiff's allegations were sufficient to show that a restricted diet was nutritionally inadequate and that placing him on the diet for fourteen days was likely to cause serious harm. *Id.*

Accepting the SAC as true, Defendant Aramark served inadequately small-portioned and unsanitary meals which included rotting and insect-infested food. (SAC ¶ 2.) Plaintiff alleges that because of the inadequate food served by Defendant Aramark, he lost over fifty pounds in less than five months and experienced stomach pains, nausea, vomiting, diarrhea, migraine headaches, and emotional distress. (*Id.* ¶ 3.) He also alleges that Defendant Aramark's actions exacerbated his mental illness and that he filed grievances about the insufficient calories and lack of sanitary conditions of the meals. (*Id.* ¶ 3 & 6.) Similar to the plaintiff in *Willey*, Plaintiff is *pro se* and his allegations about the sufficiency of the food were specific to his experience and not merely about the meals in general. *See Willey*, 801 F. 3d at 69. Rotten and infested food is clearly an immediate danger to the health and wellbeing of an inmate depending on that food for survival. *See Ward v. Goord*, No. 06-CV-1429, 2009 WL 102928, at *7 (N.D.N.Y. Jan. 13, 2009) (noting that an inmate's allegation that he was served rotten food may have been sufficient to allege an Eighth Amendment violation if he named the appropriate defendants). Additionally, similar to the plaintiff in *Phelps* which involved a restricted diet of only two weeks, Plaintiff's allegations that he was on a nutritionally inadequate restricted diet for over five months was sufficient to state a facially plausible claim. Based on the face of the SAC, Defendant Aramark failed to provide Plaintiff with adequate food served under sufficiently safe conditions.

### ii. Defendant Aramark had a sufficiently culpable state of mind

For the purposes of the motions to dismiss, the Court determines that Plaintiff pled a facially plausible claim that Aramark was sufficiently culpable in disregarding an excessive risk to inmate health or safety by serving the inadequate meals. Drawing all reasonable inferences in favor of Plaintiff and construing the *pro se* Plaintiff's SAC liberally, Defendant Aramark, as the food service provider who was "responsible for the food [the inmates] eat at [the] facility" and

who sells the facility the food (Lagitch Decl. Ex. B) would have been aware that the food was insufficient in quantity and tainted in quality and that these defects would pose an excessive risk to the health of the inmates.  *Leeds v. Meltz*, 85 F.3d 51, 53 (2d. Cir. 1996) (noting that at the motion to dismiss stage, all reasonable inferences are "drawn and viewed in a light most favorable to the plaintiff").  Further, any determination that Defendant Aramark did not have the sufficient culpable state of mind would be premature at this stage.  *See Perez v. Westchester Cty. Dep't of Corr.*, No. 05-CV-8120(RMB), 2007 WL 1288579, at *4 (S.D.N.Y. Apr. 30, 2007) (holding that the question of whether particular defendants actually created the challenged food service policy or allowed it to continue is a "question of fact that cannot be decided at [the motion to dismiss] stage of the litigation").

Thus, because Plaintiff states a facially plausible Eighth Amendment claim against Defendant Aramark, Defendant Aramark's motion to dismiss must be denied.[5]

---

[5] Defendant Aramark argues that Plaintiff's claims for injunctive and declaratory relief are moot because Plaintiff is no longer incarcerated at OCCF.  However, Plaintiff here is not seeking declaratory or injunctive relief.  He seeks punitive damages and damages for pain and suffering.  (SAC p. 6.) "The Second Circuit has held that a prisoner's claim for declaratory and injunctive relief that attributes unconstitutional practices only to officials at a certain correctional facility may be moot after the prisoner is transferred, although claims for compensatory and punitive damages are not mooted." *Murchison v. Keane*, No. 94-CV-466(CSH), 1996 WL 363086, at *3 (S.D.N.Y. July 1, 1996) (citing *Beyah v. Coughlin*, 789 F.2d 986, 988 (2d Cir. 1986)); *see Williams v. Hesse*, No. 16-CV-1343(GTS)(TWD), 2018 WL 1363759, at *9 (N.D.N.Y. Feb. 2, 2018) (allowing the plaintiff's claims for compensatory and punitive damages to proceed after the plaintiff was transferred from the facility where the allegations occurred and dismissing the plaintiff's claim for declaratory judgment as moot).

**CONCLUSION**

For the foregoing reasons, Defendants' motions to dismiss are decided as follows: The motion to dismiss from Defendants Soden, Price, and CCS is GRANTED due to Plaintiff's failure to exhaust his claims; County Defendants' motion is GRANTED due to Plaintiff's failure to exhaust his claims against Defendant Dewitt and Defendant DuBois's lack of personal involvement; and Defendant Aramark's motion to dismiss is DENIED. Defendant Aramark is directed to file an answer to the remaining claims no later than April 29, 2019. The parties are further directed to submit and complete a case management plan on or before May 13, 2019. The Court respectfully directs the Clerk to terminate the motions at ECF Nos. 33, 40 and 48 and to remove Defendants Soden, Price, CCS, Dewitt and DeBois from the caption. The Clerk of the Court is further directed to mail a copy of this Opinion at the Plaintiff's address listed on the docket and to show proof of service on the docket.

Dated:   March 28, 2019                                    SO ORDERED:
         White Plains, New York

                                                          _____
                                                          NELSON S. ROMÁN
                                                          United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Rev. Jan. 2012

----------------------------------------------------------x

                              Plaintiff(s),            **CIVIL CASE DISCOVERY PLAN
                                                        AND SCHEDULING ORDER**

        - against -


                              Defendant(s).      _____ CV _____ (NSR)
----------------------------------------------------------x

        This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with
counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

1.      All parties [consent] [do not consent] to conducting all further proceedings before
        a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c).
        The parties are free to withhold consent without adverse substantive consequences.
        (If all parties consent, the remaining paragraphs of this form need not be
        completed.)

2.      This case [is] [is not] to be tried to a jury.

3.      Joinder of additional parties must be accomplished by
        _____.

4.      Amended pleadings may be filed until _____.

5.      Interrogatories shall be served no later than _____, and responses
        thereto shall be served within thirty (30) days thereafter.  The provisions of Local
        Civil Rule 33.3 [shall] [shall not] apply to this case.

6.      First request for production of documents, if any, shall be served no later than
        _____.

7.      Non-expert depositions shall be completed by _____.

        a.      Unless counsel agree otherwise or the Court so orders, depositions shall not
                be held until all parties have responded to any first requests for production
                of documents.

        b.      Depositions shall proceed concurrently.

        c.      Whenever possible, unless counsel agree otherwise or the Court so orders,
                non-party depositions shall follow party depositions.

8.    Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9.    Requests to Admit, if any, shall be served no later than _____.

10.   Expert reports shall be served no later than _____.

11.   Rebuttal expert reports shall be served no later than _____.

12.   Expert depositions shall be completed by _____.

13.   Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14.   **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15.   Any motions shall be filed in accordance with the Court's Individual Practices.

16.   This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17.   The Magistrate Judge assigned to this case is the Hon. _____.

18.   If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19.   The next case management conference is scheduled for _____, at _____. (The Court will set this date at the initial conference.)


SO ORDERED.

Dated:  White Plains, New York

_____


_____
Nelson S. Román, U.S. District Judge